## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RASHID A. HOLBROOK | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.  WDQ-10-2567 |
| JOHN S. WOLFE, et al., | * | |
| Defendants. | * | |
| | *** | |

### MEMORANDUM

Rashid Holbrook, a prisoner at Jessup Correctional Institution ("JCI"), sued Warden John S. Wolfe and John Moss, Physician's Assistant ("P.A.") for violations of 42 U.S.C. § 1983. On March 14, 2012, this Court granted Wolfe's motion for summary judgment. ECF No. 24. Pending is Defendants Corizon, Inc.[1] and John Moss's Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 29. Holbrook has not responded.[2] No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the Defendants' motion will be granted.

---

[1] The Clerk will amend the docket to add Corizon, Inc. as a defendant.

[2] On June 25, 2012, Holbrook was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975); ECF No. 30. Holbrook was also informed that he was entitled to file materials in opposition to that motion within 17 days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. ECF No. 30.

I.  Background

   A. Holbrook's Medical History

   Holbrook suffered a gunshot wound to the left side of his face in 2003. ECF No. 29-2 at 2.[3] Since then, and during his imprisonment, Holbrook has undergone "numerous" reconstructive surgeries of his face, jaw, and skull, and received "extensive" follow-up by medical and dental personnel. ECF No. 29-2 at 2. On April 26, 2006, Holbrook underwent reconstructive surgery at the University of Maryland Medical System ("UMMS"). The following procedures were performed: reconstruction of a "left maxillary defect," repair of "left oral antral (sinus) and oral nasal fistula with free fibula osteo-septocutaneous flap," "exploration of left neck," "dissection of left carotid artery and internal jugular vein," "debridement of left maxillary defect," and removal of "hardware." *Id.* Holbrook was seen by the Dental Department ("Dental") on May 2, 2006; staff noted his care was "beyond local dental capability and general dentistry" and ordered a liquid diet. *Id.* at 3. On May 3, 2006, Dental submitted a consultation request to Wexford[4] for Holbrook to be seen by a maxillofacial surgeon. *Id.* On May 4, 2006, a maxillofacial surgeon at UMMS conducted the post-operative follow-up. *Id.*[5]

   Doctor Atnafu, a Corizon physician, submitted a consultation request to Wexford on July 10, 2006, seeking follow-up for Holbrook's left side facial reconstruction surgery and "further

---

[3] The shooting occurred before Holbrook was incarcerated. ECF No. 29-2 at 2.

[4] Wexford is the utilization review contractor for the State of Maryland Division of Corrections. ECF No. 29-2 at 2. Wexford reviews and approves all requests by on- and off-site consultants for certain medical devices, tests and procedures. *Id.* Requests are reviewed by Wexford's utilization review panel, which consists of Wexford's own health care providers. *Id.* No off-site care or surgery is permitted without Wexford's approval. *Id.*

[5] On May 23, 2006, Holbrook was admitted to UMMS for an infected cranioplasty. ECF No. 29-2 at 3. On May 26, 2006, the infected cranioplasty was removed in another surgical procedure. *Id.* Holbrook was discharged to Western Correctional Institution ("WCI") on May 30, 2006. *Id.* He was seen for staple removal at UMMS on June 15, 2006. *Id.*

revisionary surgery." ECF No. 29-2 at 3.[6]  On September 25, 2006, Holbrook underwent additional surgery at UMMS. ECF No. 29-2 at 3.  The procedures included a "debridement of right maxilla," "rotational superior labial artery myomucosal flap," "left nasal alar advancement and complex tissue rearrangement," and removal of "maxillary hardware." *Id.*  He was discharged from the hospital on September 28, 2006. *Id.*  On October 31, 2006, Doctor Tefferra, a Corizon physician, requested a CT scan of Holbrook's head and a surgical evaluation for "flap insertion in the left temporoparietal area." *Id.* at 4.  Dental followed up with Holbrook on December 6, 2006;[7] December 14, 2006; February 13, 2007; and March 7, 2007. *Id.*

After Holbrook inquired when his next surgery would be scheduled, Corizon physician Malik examined Holbrook on March 29, 2007. ECF No. 29-2 at 4.  Malik noted that Holbrook's left temporal scalp "ha[d] no bone" and recommended a surgical follow-up. *Id.*  On April 24, 2007, Holbrook was examined at UMMS Shock Trauma Clinic; it was recommended he be scheduled for a cranioplasty. *Id.*[8]  On May 28, 2007, Corizon physician Tessema submitted a request to Wexford, on Holbrook's behalf, for a "left prosthetic cranioplasty" at UMMS. *Id.*[9] On June 14, 2007, Holbrook underwent the procedure. *Id.* at 5.  Holbrook underwent an

---

[6] On September 14, 2006, Holbrook was examined by Dental after he complained of cheek biting. ECF No. 29-2 at 3.  Dental recommended that Holbrook either tolerate the condition or have tooth "# 1" extracted. *Id.*

[7] On December 6, 2006, tooth "# 20" was extracted. ECF No. 29-2 at 3.  Dental noted that the tooth had been fractured by the gunshot. *Id.*

[8] On May 4, 2007, Holbrook was examined by Dental after he renewed his complaint about cheek biting. ECF No. 29-2 at 4.  Dental recommended oral surgery before extracting tooth "# 12." *Id.*  Holbrook underwent an additional surgery at UMMS on May 24, 2007, for incision and drainage and bone flap removal. *Id.*

[9] The following day, Holbrook was again evaluated by Dental for complaints of cheek biting. ECF No. 29-2 at 4.  Dental noted that Holbrook was still undergoing reconstructive surgeries to replace his palate, *id.*, and recommended that teeth "# 1 & # 32" be extracted. *Id.* at 4-5.  It was further recommended that the extractions be coordinated with Holbrook's reconstructive surgeons. *Id.* at 5.  On June 11, 2007, Dental extracted Holbrook's tooth # 1. *Id.*

3

additional prosthetic flap cranioplasty at UMMS on January 30, 2008. *Id.* He was discharged to WCI on February 4, 2008. *Id.*

On February 4, 2008, Dental, in consultation with Tessema, submitted a request to Wexford for a CT scan of Holbrook's head and for his two week post-surgery follow-up. ECF No. 29-2 at 5. The consultation was approved; Holbrook was sent to UMMS for surgical follow-up and staple removal on February 19, 2008. *Id.* The CT scan was completed on February 21, 2008. *Id.* It indicated "postsurgical craniotomy changes" in the "left temporal lobe." *Id.*

On February 21, 2008, Dentist Jack Arch submitted a request to Wexford for an evaluation to "determine what can be done with [Holbrook's] mouth--in order for him to chew better." ECF No. 29-2 at 5. The same day, Corizon Nurse Practitioner Hammond requested a post-operative evaluation. *Id.* Holbrook was seen on February 25, 2008, and was scheduled to be reevaluated 90 days thereafter to determine if he had healed sufficiently for evaluation by a prosthodontist[10] and "oral surgery for possible reconstruction to facilitate chewing." *Id.* On June 16, 2008, Corizon's Medical Department, in consultation with Dental, submitted a consultation request to Wexford for Holbrook to be seen by a prosthodontist. *Id.* at 6. On August 26, 2008, after examining Holbrook, Tessema noted he was "following up on Dr. Arch's request for consultation with an oral surgeon." *Id.*

Holbrook was again evaluated by Dental on September 8, 2008; Dental observed that Holbrook's treatment was "beyond general dentistry" and he had a "limited ability to chew." ECF No. 29-2 at 6. On September 16, 2008, Corizon physician Joshi ordered an x-ray of Holbrook's mandible after Holbrook complained of pain. *Id.* X-rays showed multiple bullet fragments. *Id.* Holbrook was again seen by Dental on December 29, 2008. *Id.* Dental "noted" a

---

[10] A "prosthodontist" is a dentist who specializes in prosthetics. ECF No. 29-2 at 6.

request for an off-site consultation to "resume reconstructive surgeries and evaluate [Holbrook] for potential construction of upper partial dentures" with a prosthodontist. *Id.* On January 22, 2009, Holbrook was evaluated by a plastic surgeon at UMMS for his "final recommendations" regarding reconstructive surgery. *Id.* UMMS also recommended that Holbrook be evaluated by an oral-maxillo facial surgeon. *Id.*[11] On July 31, 2009, Corizon ordered x-rays of Holbrook's skull after he complained of headaches. *Id.* at 7. The x-rays, which were completed on August 6, 2009, "showed a craniotomy of the frontoparietal region secondary to a gunshot wound." *Id.* Corizon physician Espina examined Holbrook on August 24, 2009, and noted a need for additional surgery due to Holbrook's missing left temporal bone. *Id.*

Holbrook was transferred to JCI in October 2009,[12] at which point Defendant Moss began providing him with medical care. ECF No. 29-2 at 7. On November 2, 2009, Moss submitted a consultation request to Wexford for Holbrook to be seen by a plastic surgeon for "continuing reconstructive facial surgery." *Id.* The request was approved. *Id.* Holbrook was seen on December 10, 2009 at UMMS's Shock Trauma Clinic, when it was recommended that Holbrook undergo "additional cranial reconstruction and front orbital reconstruction." *Id.*

On December 28, 2009, Corizon Nurse Practitioner Lum Maximuangu submitted a request to Wexford for the recommended cranioplasty and "orbital floor reconstruction." ECF No. 29-2 at 7. Holbrook underwent a cranioplasty, removal of "deep hardware" from the left

---

[11] On March 10, 2009, Tessema again submitted a consultation request to Wexford for a plastic surgery consultation at UMMS for final recommendations as to Holbrook's reconstructive surgeries, as well as for a CT scan. ECF No. 29-2 at 6. The scan was completed on March 26, 2009. *Id.*

Holbrook was seen by Dental on April 28 and October 30, 2009. ECF No. 29-2 at 7. Dental noted that Holbrook required reconstruction of teeth "# 9-16" and restoration of "# 4 and # 22." *Id.* On December 11, 2009, Dental restored tooth # 22. *Id.*

[12] Holbrook was transferred to JCI, in part, so that he would be closer to the physicians at UMMS. ECF No. 29-2 at 7.

periorbital region, placement of a cranium and left cranial prosthetic plate, and a "secondary revision of the left orbital craniofacial reconstruction" at UMMS on February 1, 2010. *Id.* at 8. The next day, Holbrook was examined by Corizon Nurse Practitioner Wondaye Deressa, who submitted a consultation request to Wexford for surgical follow-up. *Id.*[13]  The follow-up was held on February 18, 2010 at UMMS; Holbrook was asked to return in two weeks. *Id.*

Moss submitted a request for consultation to Wexford on February 22, 2010 for an emergency room visit for post-operative swelling. ECF No. 29-2 at 8.  The following day, Nurse Practitioner Deressa submitted another consultation request to Wexford for surgical follow up at UMMS. *Id.* Also on February 23, Holbrook was seen at UMMS's Emergency Department. *Id.* No evidence of surgical complications was found and Holbrook was returned to JCI. *Id.*

On April 29, 2010, Holbrook was seen at UMMS's Shock Trauma Clinic. ECF No. 29-2 at 9.  Further surgery was recommended, including "revision of the cranioplasty and removal of malpositioned zygomatic arch plate and mandibular plate." *Id.*[14]  On October 15, 2010, Holbrook complained of an "itchy hole in his chin." *Id.*  He was seen by the plastic surgeon at UMMS, who believed that the "loose hardware" in Holbrook's jaw was "causing the drainage in his metal crease" (and thus the hole). *Id.*  The surgeon recommended removal of the plate. *Id.* Approximately two months later, Holbrook was examined by Dental in response to sick call slips Holbrook submitted on November 3 and 4, 2010, in which he requested dental implants. *Id.* Dental recommended an off-site consultation be ordered for "extensive reconstruction and

---

[13] On February 12, 2010, Doctor Yonas Sisay submitted a consultation request to Wexford for an emergency room examination of Holbrook's complaints of chest pain. ECF No. 29-2 at 8.  Holbrook was seen at the Emergency Room of Bon Secours Hospital and diagnosed with "chest wall pain and a myofacial strain." *Id.*

[14] Holbrook was examined by Dental on August 18, 2010, after complaining of right jaw pain and trouble eating. ECF No. 29-2 at 9. His medical history was reviewed and an x-ray taken of tooth "# 31." *Id.*

rehabilitation to restore function via dental prosthodontics, as well as massage and exercise of the muscles of mastication." *Id.*

Corizon received the plastic surgeon's final report on February 15, 2011. ECF No. 29-2 at 9. The surgeon noted that one of the plates in Holbrook's jaw was "malpositioned" and "a screw in the plate in his lower jaw" appeared loose. *Id.* He recommended a "revision of the cranioplasty and removal of the mandibular plate." *Id.* The following day, Corizon physician Moultrie submitted a request to Wexford for a plastic surgery evaluation for surgical revision of the malpositioned plate and loose screw. *Id.* On March 25, 2011, Moultrie consulted with Dental on Holbrook's ability to chew. *Id.* at 10. He wrote, "There seems to be an issue concerning use of a traditional denture for him to help him eat, due to the prosthetic palate that he has in place. It was recommended by dental that he be evaluated for possibility of dentures or dental implants in this case." *Id.* On March 30, 2011, Dental requested an evaluation from Wexford for an oral prosthesis and consultation with an ENT or a plastic surgeon, stating, "I recognize hard and soft palate and lack of alveolar bone would not support prosthesis. My recommendation is that Pt. be seen thu[sic] ENT and/or Plastic Surg for tx to allow for balanced occlusion thru ridge aug or surg intervention to effectuate mastication." *Id.*

Holbrook was again examined by Dental on April 4, 2011. ECF No. 29-2 at 10. Several x-rays were taken. *Id.* Dental noted that several teeth were missing and there was no "palpable bone" from the area of teeth "# 9-16." *Id.* "No borders of the left maxillary sinus" were visible. *Id.* Dental concluded that Holbrook had "severe trauma of the left maxilla causing his loss of

teeth and left maxillary sinus" and probable Le Fort[15] III defect. *Id.* Dental recommended that Holbrook have consultations with an ENT, plastic surgeon, and oral maxillofacial surgeon before beginning dental restoration work. *Id.* Dental emphasized that "[a]ny prosthetic appliance would be both counter productive and premature at this time!" *Id.* A routine follow-up visit occurred on April 11, 2011. *Id.*

Holbrook again inquired about dental implants and was seen by Dental at JCI on June 10, 2011. ECF No. 29-2 at 11. Dental consulted with Moultrie, who submitted a request to Wexford for dental examination with a specialist. *Id.* Wexford denied the request. *Id.* On June 22, 2011, Moultrie again consulted with Dental regarding Wexford's denial of specialized dental treatment. *Id.* Dental reexamined Holbrook on July 8, 2011, and again noted "a lack of palpatable [sic] bone" where teeth "# 9-16" typically are, along with "temporomandibular joint (TMJ) dysfunction and complaints of muscle fatigue and mild pain on [the] right side while chewing." *Id.* Dental reiterated that it was "outside the scope of general dentistry to evaluate or treat difficulty with mastication or TMJ dysfunction." *Id.*

On July 11, 2011, Moultrie "renewed" the request to Wexford for an additional specialized dental evaluation and "discussed additional surgery to replace dentition in [the] left upper oral cavity" with the Wexford panel. ECF No. 29-2 at 11. The consultation was approved. *Id.* On August 2, 2011, Holbrook was seen at UMMS and referred to a dentist and for a CT scan. *Id.*

On August 17, 2011, Moultrie submitted a consultation request to Wexford for a CT scan of the "maxillofacial area" to "evaluate whether Holbrook was a candidate for future surgery." ECF No. 29-2 at 11. The request was approved and Holbrook underwent a CT scan on August

---

[15] Le Fort fractures "involve[e] the maxillary bone and surrounding structures in a usually bilateral and either horizontal, pyramidal or transverse way." ECF No. 29-2 at 10. Moss describes Le Fort fractures as "classic in facial trauma." *Id.*

8

22, 2011. *Id.* at 11-12. The scan showed "extensive posttraumatic and postsurgical changes," with no significant changes since his last CT study. *Id.* at 12. On August 31, 2011, Moultrie submitted another consultation request to Wexford for follow-up with an oral-maxillary facial surgeon. *Id.* Plaintiff was examined on September 22, 2011, by a dentist at UMMS. *Id.* A bone graft, dental implants, and consultation with a prosthodontist were recommended. *Id.*

Holbrook was again examined by Moultrie on October 27, 2011. ECF No. 29-2 at 12. Moultrie noted that Holbrook was awaiting a decision from UMMS regarding surgery to "aid with chewing," and that the appointments with the oral surgeon and prosthodontist had occurred. On December 20, 2011, Moultrie noted in Holbrook's chart that surgery was planned for "hardware removal, anterior iliac crest bone graft, flap debulking, and 11 dental implants" at UMMS. *Id.*

On March 7, 2012, Defendant Moss completed a preoperative evaluation of Holbrook. ECF No. 29-2 at 12. Holbrook was admitted to the hospital three days later, and underwent an "autogenus iliac crest bone graft to the left side of his face, hardware removal, flap debulking, and insertion of four endosseous implants (metal or ceramic dental implants placed in the jaw bone)." *Id.* Holbrook was discharged on March 21, 2012, to the Infirmary at JCI. *Id.* On March 21, 2012, Moultrie submitted a consultation request to Wexford for follow-up at UMMS with the oral surgeon. *Id.* Defendant Moss evaluated Holbrook on March 26, 2012, and also noted that Holbrook "would need to follow up with UMMS for post-operative evaluations." *Id.* at 13. Follow-up occurred on March 29, 2012. *Id.*

On April 12, 2012, Moultrie submitted a consultation request to Wexford for another post-operative evaluation at UMMS. ECF No. 29-2 at 13. On April 26, 2012, Moultrie

9

submitted another consultation request to Wexford for "additional oral maxillofacial surgery" for Holbrook. *Id.*

B. Procedural History

On September 16, 2010, Holbrook sued Warden Wolfe and "Medical Departments" for violations of 42 U.S.C. § 1983. ECF No. 1. On September 29, 2010, Holbrook timely supplemented his complaint. *See* ECF Nos. 3, 6. In his supplemented complaint, Holbrook requested "an injunction to the Medical Department at JCI to request my oral surgeries to be done by UMMS," and "$10 dollars a day" for mental, physical, and emotional suffering. ECF No. 6. Holbrook also requested that "everyone aware of my needs in the department of corrections at JCI" be terminated. *Id.* On May 16, 2011, this Court dismissed the complaint against "Medical Departments" and directed the Clerk to add John Moss, P.A. as a defendant. ECF No. 10. On November 4, 2011, Wolfe timely moved to dismiss or for summary judgment. ECF No. 21; *see* ECF Nos. 13-20. On March 14, 2012, the Court granted Wolfe's motion and directed Moss to answer Holbrook's complaint. ECF No. 24. On June 21, 2012, Moss and Corizon, Inc. timely moved to dismiss or, in the alternative, for summary judgment. ECF No. 29; *see* ECF Nos. 27-28.

II. Analysis

A. Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

10

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (internal quotation marks omitted). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

B. The Defendants' Motion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" under its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants (or their failure to act) amounted to deliberate indifference to serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to serious medical needs requires proof that, objectively, plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

11

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with "unqualified access to health care"). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (*quoting Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001). Further, "[d]isagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The Defendants argue that Holbrook "cannot satisfy the subjective elements to state a claim under 42 U.S.C. § 1983" because, although Holbrook has "serious medical needs," he is receiving "abundant medical and dental attention." ECF No. 29-1 at 15. Since April 2006, Corizon has submitted numerous consultation requests[16] for reconstructive surgery to Wexford.

---

[16] Holbrook's allegation that consultation requests were not timely submitted, ECF No. 1 at 4, is refuted by the record before the Court.

*See generally* ECF Nos. 29-2, 29-3.  Holbrook has undergone seven reconstructive procedures in

that time, after which he was evaluated in post-operative follow-up appointments at UMMS.  *See*

*generally* ECF Nos. 29-2, 29-3.  Holbrook's disagreement with the course or pace of his

treatment does not give rise to a federal civil rights complaint.  *See Russell v. Sheffer*, 528 F.2d

318, 319 (4th Cir. 1975).  The right to treatment is "limited to that which may be provided upon

a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply

that which may be considered merely *desirable.*" *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th

Cir.1977) (emphasis added).  "Disagreements between an inmate and a physician over the

inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are

alleged." *Wright*, 766 F.2d at 849.  There are no exceptional circumstances in this case.

Holbrook has received extensive medical and dental care for his serious medical needs.  Any

delay in coordinating his care does not rise to the level of a constitutional violation.  The

Defendants are entitled to summary judgment.

III. Conclusion

For the reasons stated above, the Defendants' motion, construed as a motion for summary

judgment, will be granted.  A separate Order follows.

9/27/12
Date

William D. Quarles, Jr.
United States District Judge

13